UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 09-2693(DSD/SER)

Pall Corporation,

        Plaintiff,

v.  **ORDER**

City of Minneapolis,

        Defendant.

    Alain M. Baudry, Esq., James Duffy O'Connor, Esq., R. Christopher Sur, Esq., JoLynn M. Markison, Esq. and Maslon, Edelman, Borman & Brand, 3300 Wells Fargo Center, 90 South Seventh Street, Minneapolis, MN 55402, counsel for plaintiff.

This matter is before the court upon the motion for partial summary judgment by plaintiff Pall Corporation (Pall).[1] Based on a review of the file, record and proceedings herein, and for the following reasons, the court grants the motion.

## BACKGROUND

This dispute arises out of the termination of an equipment contract for water-filtration equipment between Pall and defendant City of Minneapolis. In 2005, the City issued a call for bids to provide filtration equipment to construct a membrane-based, water-treatment plant in Fridley, Minnesota (the Project). The City

---

[1] Pall is a New York corporation with its principal place of business in New York.

detailed the Project requirements in a Project Manual. Among the requirements, the City specified that any proposed membrane fiber have identical "molecular weight cut-off/pore size, membrane fiber I.D./O.D. and membrane material" to a fiber already in use. See Leishman Aff. Ex. K, at 0062-63 (art. 1.5). The membrane had to achieve a 4-log (99.99%) virus reduction and have or be capable of receiving certification under NSF Standard 61. Id. at 0063. The Project Manual further required all equipment furnished to be "new and ... the standard product of a manufacturer who is fully experienced, reputable, qualified and regularly engaged for at least 5 years in the manufacture of the equipment to be furnished." Id. at 0235 (section 11301).

Pall submitted a bid based on ultrafiltration (UF) modules designed and manufactured by nonparty Asahi Kasei Corporation (Asahi). Most water-treatment systems in the United States use microfiltration (MF) followed by additional chemical or physical treatment. MF membranes alone cannot achieve 4-log virus removal. As a result, the Project required UF membranes. See Leishman Aff. Ex. V, at 3 & n.5. Pall and Asahi had used five-inch diameter UF modules in other projects, but determined that a six-inch UF module would allow for a smaller, more cost-effective design for the City. On September 29, 2006 the City and Pall entered into a contract for

a system that used 3,948 six-inch UF modules.[2] The contract demanded delivery of the modules between March 7, 2009, and July 5, 2009, and provided liquidated damages of $2,000 per day if the modules were not delivered by July 5, 2009.

Asahi did not have the capacity to manufacture the required number of UF modules in less than a year. See Otoyo Decl. ¶ 4. As a result, on April 1, 2008, Pall ordered 3,500 UF modules from Asahi. Poschmann Decl. Ex. 3, at 0869, Apr. 6, 2010. To fulfil the order, Asahi modified its production, hired and trained additional workers and began manufacture of the UF modules. See Otoyo Decl. ¶ 6. On July 14, 2008, Pall acknowledged receipt of a change order from the City, which revised the equipment delivery dates to between April 3 and October 1, 2010. See Poschmann Decl. Ex. 4, at 0845-48, Apr. 6, 2010. The change order also revised the liquidated damages start date to October 1, 2010. Id. at 0848. Pall did not delay manufacture.

On November 21, 2008, the City instructed Pall to suspend work, and Pall notified Asahi. See Poschmann Decl., Ex. 5, Apr. 6, 2010. At the time, Asahi had completed 2,725 UF modules and had 500 UF modules in various stages of production. Otoyo Decl. ¶ 7.

---

[2] The number of UF modules included a stock supply equal to 10% of the system.

Asahi shipped 2,560 UF modules to Pall, and Pall paid Asahi for those modules. On February 18, 2009, the City cancelled the contract under article 11.01:

> [The City] has the right to cancel the Contract, without cause, at any time prior to delivery of the Goods by written notice. Cancellation pursuant to the terms of this paragraph shall not constitute a breach of contract by [the City]. Upon cancellation:
>
> 1. [The City] shall pay [Pall] for Goods, specially manufactured for the Project, plus any documented reasonable direct and indirect costs incurred by [Pall] in producing such Goods not recovered by payment for the reasonable value of the Goods.
>
> 2. For Goods which are not specially manufactured for the Project, [Pall] shall be entitled to a restocking charge of 10 percent of the unpaid Contract Price of such Goods.

Leishman Aff. Ex. K, at 0103 (Art. 11.01).

Pall began this action on September 30, 2009, seeking damages in excess of $9 million and a declaration that the UF modules were goods specially manufactured for the Project.[3] On August 13, 2010, Pall moved for partial summary judgment on its request for declaratory judgment.[4] The court now considers the motion.

---

[3] Pall amended its complaint on January 28, 2010. ECF No. 16.

[4] Pall's August 13, 2010, motion is substantially the same as its April 24, 2010, motion. Therefore, the court only addresses the later-filed motion.

**DISCUSSION**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c);[5] see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of his claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23.

---

[5] The court cites the Federal Rules of Civil Procedure in effect at the time of the motions and hearing. Changes effective December 1, 2010, do not affect the outcome of this case.

"The cardinal purpose of construing a contract is to give effect to the intention of the parties as expressed in the language they used in drafting the whole contract." Art Goebel, Inc. v. N. Suburban Agencies, Inc., 567 N.W.2d 511, 515 (Minn. 1997). A contract must be interpreted in a way that gives all of its provisions meaning. Current Tech. Concepts, Inc. v. Irie Enters., Inc., 530 N.W.2d 539, 543 (Minn. 1995). "Where the parties express their intent in unambiguous words, those words are to be given their plain and ordinary meaning." Motorsports Racing Plus, Inc. v. Arctic Cat Sales, Inc., 666 N.W.2d 320, 323 (Minn. 2003) (citation omitted).

Pall argues that the UF modules are goods "specially manufactured for the Project" under § 11.01 of the contract. The City responds that the modules were not specially manufactured because the contract required all goods to be "standard product." Section 11.01 distinguishes between goods "specially manufactured for the Project," and those "which are not specially manufactured for the Project." Unlike "Goods" and "Project," the phrase "specially manufactured" bears its ordinary meaning. The City argues that the requirement in section 11301 that all equipment be "standard equipment" prevents the UF modules from being specially manufactured for the Project. Under the interpretation of the City, however, no equipment could be "specially manufactured for the Project" and section 11.01(a)(1) has no meaning. The court

will not adopt an interpretation that renders provisions meaningless. Viewed in the context of the City's demand for tested fibers identical to those already in use, section 11301 ensures the use of proven technology. Such requirement does not preclude a piece of equipment from being specially manufactured for the Project. Therefore, the court rejects the interpretation of the City.

The UF modules are specially manufactured under a plain reading of section 11.01(a). Here, the 3,500 UF modules required an enhanced workforce and production modifications by Asahi. Pall does not stock the modules. The modules would not have been manufactured but for the Project. The parties have expressed their intent in the unambiguous terms of the contract. Therefore, partial summary judgment is warranted, and the court declares that the UF modules were "Goods specially manufactured for the Project" under the contract.[6]

---

[6] Although this is not a statute of frauds case under the Uniform Commercial Code (UCC), the UCC reinforces the plain meaning of section 11.01(a). The UCC exempts goods from the statute of frauds when they are "to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business ...." Minn. Stat. § 336.2-201(3)(a); see Associated Lithographers v. Stay Wood Prods., Inc., 279 N.W.2d 787, 791 (Minn. 1979). Pall introduced evidence that it does not sell six-inch UF modules in the ordinary course of its business. See Rev. Poschmann Decl. ¶¶ 4, 14, 20, Aug. 13, 2010; Poschmann Dep. at 63. Water-treatment systems that use MF modules combined with chemical treatment have no need for UF modules. The number of UF modules manufactured for the Project makes significant sale of those modules in the ordinary course of Pall's business unlikely.
(continued...)

7

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that the motion for partial summary judgment [ECF No. 35] is granted

Dated: January 24, 2011

                                        s/David S. Doty
                                        David S. Doty, Judge
                                        United States District Court

---

[6](...continued)
Evidence that Pall has installed smaller UF modules in systems does not establish the salability of the quantity of six-inch modules. Simply, the City has not introduced evidence from which the court can infer that 2,560 or more six-inch UF modules can be sold in the ordinary course of Pall's business.